# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHARLES O'NEAL,

       Petitioner,               Case No. 2:15-cv-13556
                                         HON. GERSHWIN A. DRAIN

v.

SHERMAN CAMPBELL,

       Respondent.
_____/

# OPINION AND ORDER DENYING
# PETITION FOR WRIT OF HABEAS CORPUS AND DENYING
# CERTIFICATE OF APPEALABILITY

Petitioner, Charles O'Neal, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan. He challenges his conviction for attempted first-degree home invasion. Respondent, through the Attorney General's Office, has filed an answer in opposition to the petition. For the reasons set forth below, the Court denies the petition and denies a certificate of appealability.

## I. BACKGROUND

In 2011, Dana and Lance Roberts were visiting Michigan for the Thanksgiving holiday. They stayed with Lance's cousin, Ryan Doyle, at his home in Royal Oak. Mr. Doyle left for work between 5:30 and 6:00 A.M. on November 28, 2011, leaving the Roberts at his home in the guestroom. At around 9:30 A.M., Ms. Roberts heard a loud knocking at Mr. Doyle's door. The couple reasoned that someone was at the door looking for Mr. Doyle and decided to ignore it. However, the knocking became persistent and Ms. Roberts went into the hallway to see what was happening. She saw a man peer into Mr. Doyle's bay window, then heard a "ramming" at the front door. The door frame buckled and came off of the wall. The couple heard a second, quieter thud and Mr. Roberts began yelling, in an attempt to get the man to leave. Ms. Roberts called 911 and the police arrived quickly.

Officer Andrew Izidorek was the first officer dispatched to Mr. Doyle's home. He described the Roberts as "hysterical," but Ms. Roberts was able to give a description of the man at the door, a heavy-set white male in his mid to upper forties wearing a striped shirt and knit cap. Officer Rich Millard, who was working as a school officer at Royal Oak High School, also received the dispatch and headed toward the area of Mr. Doyle's home. On his way, he saw a man matching Ms. Roberts' description and

2

stopped to talk to him. Officer Izidorek brought Ms. Roberts to the man and Officer Millard, and Ms. Roberts identified the man as Petitioner.

Petitioner was charged with attempted breaking and entering. At trial, Petitioner testified on his own behalf. He admitted to kicking the door, but argued that he had no intent to commit larceny. Instead, Petitioner asserted that he was walking from the bus to his brother's home and began to feel ill. He testified that he knocked on the door to ask to use a phone to call his brother. When no one answered, he kicked the door out of frustration.

The prosecution introduced the testimony of Hilda Shamoun Ibrahim. Petitioner was convicted of burglarizing her party store in 1997. He entered the store through a hole in the roof and stole cartons of cigarettes, which he then attempted to sell at a nearby gas station. Eddie Denha and Gerald Carrico also testified about a September 3, 2006 robbery, in which Petitioner stole computers from McDonald Modular. Their testimony was admitted pursuant to Michigan Rule of Evidence 404(b) to show Petitioner's intent to commit to larceny.

The jury convicted Petitioner of first-degree home invasion. On June 4, 2012, he was sentenced to 38 months to 25 years. Thereafter,

Petitioner filed an appeal of right through counsel in the Michigan Court of Appeals, raising the following claims:

  i. The trial court erred in allowing the prosecution to present evidence of prior similar offenses and convictions pursuant to MRE 404(b); and

  ii. There was insufficient evidence presented during trial to support the jury's verdict.

Petitioner also filed a *pro se* brief, raising three additional claims.

  i. The trial judge erred in not recusing himself due to his relationship with the victim's family;

  ii. Trial counsel was ineffective by failing to conduct an investigation into the MRE 404(b) evidence; and

  iii. Trial counsel was ineffective for instructing Petitioner to testify on his own behalf.

The Michigan Court of Appeals affirmed the conviction. *People v. O'Neal*, No. 311760, 2014 WL 231911 (Mich. Ct. App. Jan. 21, 2014). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. O'Neal*, 497 Mich. 892 (2014). Petitioner then filed a motion for reconsideration, which was also denied. *People v. O'Neal*, 497 Mich. 985 (2015). Petitioner then filed the instant petition for habeas relief, raising the following claims:

  i. The trial court erred in admitting prior convictions without conducting a hearing to determine the probative value of the convictions;

ii. The trial judge's refusal to recuse himself deprived Petitioner of a fair trial because of the judge's personal relationship with the victims; and

iii. Trial counsel was ineffective when he encouraged Petitioner to take the stand, violating his Fifth Amendment right against self-incrimination.

The Court will address each claim of error in turn.

## II. STANDARD

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially

5

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Put another way,

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal . . . . As a condition for obtaining habeas corpus from a

6

federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may

7

rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. ANALYSIS

### A. Evidence of Prior Criminal Activity

In his first claim, Petitioner asserts that the trial court erred in admitting evidence of his prior break-ins as a method to show intent. Specifically, the trial court allowed the prosecution to introduce evidence that Petitioner had been charged with breaking and entering in 1997 and 2006 in an effort to show that he had the requisite intent to commit larceny. The evidence was admitted pursuant to Michigan Rule of Evidence 404(b), which provides that evidence of other crimes, wrongs, or acts maybe admissible to prove intent. Respondent counters that the claim is not cognizable on habeas review.

Trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *Serra v. Michigan Dep't of Corr.,* 4 F.3d 1348, 1354 (6th Cir.1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.

8

2003). As to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is "so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States,* 493 U.S. 342, 352–53 (1990). "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh,* 329 F.3d at 512.

Petitioner's claim that the state trial court violated the Michigan Rules of Evidence by admitting evidence of prior acts is not cognizable on habeas review. Therefore, habeas relief is not warranted on this state law claim.

Even if Petitioner stated a cognizable claim, he would not be entitled to relief on this basis because he cannot show that the evidence rendered his trial fundamentally unfair. As reasonably addressed by the Michigan Court of Appeals, the trial court did not err in the admission of the evidence for three reasons. First, it was introduced to show Petitioner's intent, which is allowable under Rule 404(b). Second, the evidence was relevant because one of the elements of first-degree home invasion is intent to commit a felony, larceny, or assault in the dwelling. Mich. Comp. Laws § 750.110a(2). "Indeed, the main issue before the jury was whether defendant intended to gain entry to the home for purposes of committing a

9

larceny therein or whether, as defendant claimed, his actions were those of a sick man looking to make a telephone call." *O'Neal*, 2014 WL 231911 at 1. Third, the evidence was probative because "the fact that defendant was previously involved with breaking and entering into four unoccupied buildings (including two residential dwellings), and committing larceny therein" tends to render it more likely that Petitioner kicked the door with an intent to commit larceny. *Id.* at *2. Looking at the totality of the circumstances, there is no indication that Petitioner was denied a fundamentally fair trial as a result of the admission of the evidence. He is not entitled to habeas relief on this claim.

### B. Trial Judge Recusal

Petitioner next argues that the trial judge should have recused himself because of his familiarity with Mr. Doyle's father, a former city attorney.[1] The Michigan Court of Appeals rejected this claim, reasoning that the trial judge's "general acquaintance with the family," did not rise to the level of actual bias or prejudice. *O'Neal*, 2014 WL 231911 at *4. The Court of Appeals addressed the alleged appearance of bias as follows:

---

[1] In his Standard 4 brief before the Michigan Court of Appeals, Petitioner also argued that the magistrate should have been disqualified, but he appears to drop that argument in the instant petition. To the extent that he does attempt to raise such an argument, the Michigan Court of Appeals' denial of this claim was reasonable, as there was no evidence that the magistrate even knew Mr. Doyle's family.

10

> In this case, viewing the facts objectively, the trial court's tangential connection is not the type of "extreme" situation giving rise to a due process concern. That the trial court knew a former city attorney, and might offer a cordial greeting to his children, does not demonstrate a risk of actual bias or prejudgment in defendant's case such that due process required recusal. Moreover, these facts do not demonstrate an appearance of impropriety because reasonable minds would not expect such a minimal or passing acquaintance to impair the trial court judge's ability to carry out his judicial responsibilities with integrity, impartiality and competence.

*Id.* at 5 (internal citations and quotations omitted). Thus, the Court of Appeals reasonably considered both whether there was actual bias as well as whether there was a likelihood of bias or appearance of bias.

Petitioner challenges the Court of Appeals' holding, arguing that it failed to apply the correct test, which he asserts is: "whether or not actual bias exist[s] but also whether there is a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindication of the interest of the court and interest of the [affected party]." (ECF No. 1 at 10, quoting *Ungar v. Sarafite*, 376 U.S. 575 (1964)). However, the Michigan Court of Appeals *did* consider both whether the trial judge was actually biased and whether there could be an appearance of bias, and concluded that neither form of bias was present. This conclusion was reasonable, especially considering the trial judge's own description of his relationship with the Doyle family:

11

> My involvement or my knowledge of the Doyle family is that Larry Doyle—thank you—was the former city attorney for the City of Royal Oak at a time when I worked as a clerk, and I believe—I don't know in a—a formal capacity I actually worked for him. The Villerot family I—I under—I was told married into the Doyle family, and then I am told by the prosecutor maybe married out of the—the Doyle family. I know Larry Doyle's son, though I confess that I don't recollect his name off the top of my head, and maybe he has more than one son. No contact with them other than cordial greeting in the hallway. I see Larry Doyle, who now works for the county, I believe, but that is the sum and substance of my knowledge.

(ECF No. 7-5 at 3.) Moreover, Mr. Doyle, with whom the trial judge has only a passing acquaintance, was not even home at the time Petitioner visited his house, and there is no indication that the trial judge had personal involvement with Dana or Lance Roberts.

Further, there is no evidence that the trial judge was actually biased or had an interest in the outcome of the case. Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case. *Bracy v. Gramley*, 520 U.S. 899, 899 (1997). However, "judicial disqualification based on a likelihood or an appearance of bias is not always of *constitutional* significance[.]" *Railey v. Webb*, 540 F. 3d 393, 400 (6th Cir. 2008) (emphasis in original) (citing *Fed. Trade. Comm'n v. Cement Inst.*, 333 U.S. 683, 702 (1948) ("most matters relating to judicial disqualification d[o] not rise to a constitutional level.")). The Supreme Court has only held that something less than actual bias

violates constitutional due process in two types of cases: "(1) those cases in which the judge 'has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion;' and (2) certain contempt cases, such as those in which the "'judge becomes personally embroiled with the contemnor.'" *Railey*, 540 F.3d at 400 (citations omitted) (alteration in original) (quoting, respectively, *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) and *In re Murchison*, 349 U.S. 133 (1955)).

The Supreme Court has also acknowledged four types of cases that, "although they present prudent grounds for disqualification as a matter of common sense, ethics, or 'legislative discretion,' generally do not rise to a *constitutional* level-'matters of [1] kinship, [2] personal bias, [3] state policy, [and] [4] remoteness of interest.'" *Railey*, 540 F. 3d at 400 (citing *Tumey*, 273 U.S. 510, 523. "The critical test is whether the alleged bias 'stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *United States v. Hartsel*, 199 F. 3d 812, 820-21 (6th Cir. 1999) (quoting *Wheeland v. Southland Corp.*, 875 F. 2d 1246, 1251 (6th Cir. 1989)). Here, the trial judge's passing acquaintance with the father of the homeowner, who was not even present at the time of the incident, does not

rise to the level of constitutional significance, and therefore Petitioner is not entitled to habeas relief.

### 3. Ineffective Assistance of Counsel

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*.

14

*Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

Here, Petitioner argues that his trial attorney was ineffective because he advised him to testify in his own defense at trial. The Court of Appeals dismissed this claim, concluding that the record was "devoid of any indication regarding whether counsel encouraged or discouraged defendant's decision to testify," and "nothing in the record to suggest that defense counsel failed to inform [him] of the potential repercussions of taking the stand," thus there was no evidence that counsel's performance was deficient. *O'Neal*, 2014 WL 231911 at 7-8. The Court of Appeals further noted that there were "sound strategic reasons" for his testimony. Indeed, Petitioner stated at trial that he was testifying voluntarily for strategic reasons. (ECF No. 7-7 at 98-99.) He and his attorney engaged in the following exchange:

> MR. CAMARGO: And you understand that you have an absolute fundamental constitutional right not to testify?
>
> MR. O'NEAL: Yes, I understand that.

> MR. CAMARGO: Ok, I notice there was some hesitation, so I'm going to ask you again and I'm going to make sure we're clear about this, okay? You understand that you don't have to testify. No one could force you to, not the Judge, not the prosecutor, not myself. Do you understand that?
>
> MR. O'NEAL: Yes.
>
> MR. CAMARGO: Okay, you've indicated to me previously that you want to testify?
>
> MR. O'NEAL: I have no choice. I have to testify because they brought up my past record.
>
> MR. CAMARGO: Okay. But you understand that—really I know that's how you feel from a strategic standpoint, but you understand you really do have a choice. You could say no right now and not testify. Do you understand that part of it?
>
> MR. O'NEAL: Yes, I do but—
>
> MR. CAMARGO: Okay. Okay. For a strategic reason that you've indicated you feel like you want to or have to, correct?
>
> MR. O'NEAL: Yes.
>
> MR. CAMARGO: Okay. No one's—I haven't threatened you. No one else has threatened you to get you to plead or to— excuse me, to waive your right and—
>
> MR. O'NEIL: No. no.

*Id.* Following that discussion, the court reiterated that the jury would be informed that Petitioner's decision not to testify could not be used against him. There is no indication, therefore, that trial counsel improperly forced Petitioner to waive his right to remain silent and Petitioner cannot show that

16

counsel's performance fell below an objective standard of reasonableness. The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As such, Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel.

## IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim

upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

For the reasons stated above, the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED**.

SO ORDERED.

Dated: September 24, 2018  /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 24, 2018, by electronic and/or ordinary mail.

s/ Julie Owens
Case Manager